Caldwell, J.
This is an action brought in the court below by Ehlert the administrator of Christian Holtz against two railroad companies, The Lake Shore and what is familiarly known as The Big Four, for causing the death of Holtz. It occurred at Barton street, in this city, where the Big Four road crosses Barton street, and the Lake Shore has the privilege from the Big Four to run certain trains over the tracks that pass over Barton street. A train was passing over the street on the northerly track. The gate is at the south side of the tracks. About the time this train was to pass over the north track, the gate was lowered, and about the same time Christian Holtz and his wife appeared at the crossing on the street. They took a position between the gates and the railroad tracks, and a position very near to the south track, and stood there while a freight train was passing over the north track. A Lake Shore train coming in on this track was late— just how late we are not informed- — and while Christian Holtz was standing there, and at the moment when the freight train either had passed the street crossing or was just about passing — -the caboose on the end was either passing or had passed, Christian Holtz either stood so close to the south track that this belated Lake Shore train, coming at a very rapid rate of speed for the place in which it was running in the city, either struck him as he stood too close to the track, or struck him as he was about to move forward or had just commenced to move forward to cross over to the tracks on the other side, and killed him; and this action is brought to recover compensation to the family. A judgment was obtained in the court below, and the Lake Shore road files na petition in this court with a bill of exceptions setting out all the testimony, and the Big Four road files a cross-petition.
Both railroads, ask to have the case reversed.
It is claimed in this case, that if this verdict must stand by reason of the fact that Christian Holtz was not guilty of contributory negligence, then it is wrong, and should be reversed. That his standing where he did either so close as to be hit, *180 or as it is claimed, undertaking to cross at the time when he could have seen the Lake Shore train approaching, was such contributory negligence that he could not recover in this case. And it is urged, and it is true that, however, careless the Lake Shore Company may have been in running its train at a rate of twenty-five to thirty miles an hour in the city, within the city limits and at a place such as this was, at a street crossing, that however negligent that railroad company may have been, and whatever negligence there may have been on the part of the other road, if the plaintiff below was guilty of contributory negligence he cannot recover in this case, however negligent the servants of the two railroads may have been.
We have no doubt in this case but that Christian Holtz, standing where he did or attempting to walk across these railroad tracks, whichever he was doing (and the testimony leaves it in doubt whichever he was doing), that he was guilty of contributory negligence.
There cannot be any doubt but that if he had looked a reasonable time before he was struck, he would have seen this Lake Shore train approaching him; but that, it is contended, does not entirely determine this case. There are questions beyond that;and it is altogether likely that the jury brought in their verdict in favor of the plaintiff below upon grounds asserted upon the law as given to them by the judge involving the conduct of these parties, these two railroad companies, after he (Holtz) had placed himself in a position of danger; and it is claimed that the court in giving that law, erred, and with other errors assigned I will proceed to notice them.
It is contended that the court erred in failing to give the request to charge made by the Lake Shore Company.
The court trying the case, charged the jury that the damages that it could give in the case if it came to the point of awarding damages, must be damages for pecuniary loss to the family.
A request was made by the Lake Shore Company that the court say to the jury that in making up the amount of damages, if they found that the family was entitled to any damages at all, in making up the amount of such damages, they could not take into consideration any solace or bereave *181 ment, or suffering by way of bereavement, and matters of that kind, but could only take into consideration the pecuniary loss to the family.
The court did not give that request. It was a very prop, er request to give, and it would have been well for the court to have given it. The word, “pecuniary”, “íolace”, and “bereavement”, as applied in a case of this character, are terms not altogether fully comprehended by a jury, and a little explanation if it is asked for, or a clear distinction to be made between the terms, if called for, is always proper for the court to give.
If this is error, it is not error because the court did not give the law correctly, but it is only error because the court misled the jury, or left the jury in such a way in its charge that the jury might understand that it could give damages outside and beyond that of the pecuniary loss.
Now, we find nothing in the court’s charge that would warrant any jury in believing that that was the intention or the thought of the judge in anything that he said; and the word “pecuniary” is not of such an incomprehensible nature or technical in its meaning that a jury might not comprehend it. If these requests were presented or read to the jury, in the presence of the jury, a the law presented therein draws the distinction closely between “solace” and “pecuniary loss”, so that, if the court openly refused,after the requests were made, in open court, it was of something that the jury would clearly understand the difference between the two terras. They were not so read, and we think there was nothing in them although properly read.
We think the charge, as given, was not misleading, and is not such error that the case should be reversed, for it is not prejudicial.
Ordinances were introduced; one as to the rate of speed of the train in passing over the crossing; another, as to the time of lowering the gate — lowering it while one train is passing and raising the gate after 'that train has passed, to give persons waiting an opportunity to pass over, and then, if necessary, lower it for another train, but, between trains, giving an interim for persons waiting to pass over the tracks.
Those two'ordinances were read, and it is claimed that *182 there was error in admitting an ordinance that was not pleaded. We find no error in this.
It is claimed that the court’s construction of the ordinance as to the trains passing, as applied to this case, was erroneous.
The court construed the ordinance exactly as it is given. There is but one way to construe that ordinance: That
when one train passes the gates are to be raised, people are to be allowed to pass. If another train is to pass, it must wait until the people have passed over; then the gates are to be lowered to let that train pass,
It is claimed that these two trains were both passing at the same time, and that the court should have said to the jury that the ordinance, as it is written and printed, will permit two trains to pass at the same time, going in opposite directions.
The evidence' in this case, as I have already said, was conflicting as to whether both trains were at the same time passing over this crossing; and it was a matter to have been left properly to the jury. But if the court had been called upon by a request to say that under these ordinances two trains might pass at the same time, either in the same or opposite directions, if they both passed substantially at the same time, if the court has been requested to charge that, that court, undoubtedly, would have done so. But the court construed the ordinance properly as it is written. The fact that the ordinance itself does not apprehend such a state of facts as was claimed by the railroads to exist in this particular case, that being true, the court was not bound in construing the ordinance, to go beyond it, All that the court was required to do if its attention was called to it by special request, was to either say or not say to the jury that two trains might pass if they passed substantially at the same time. We find no error in either the introduction or construction of the ordinance.
The next error complained of is certain language used by the court in its charge to the jury:
“ Further I say to you, gentlemen, that although the decedent may have been guilty of negligence in putting himself in a dangerous position, a position in which he was liable to be injured by the passing of the trains, yet if the *183 employes of the railroad company in charge of said passenger train, knew of his danger, or might have known of his danger, by the exercise of ordinary care and, by the exercise of ordinary care thereafter, controlled and stopped and managed the train in such a manner as to save the decedent from the injury and from death, it was their duty to do it; but, if they failed to do it, under such circumstances, that failure would be the approximate cause of the death, and not the negligence in getting into or going into a place of danger. ”
I have already said that Christian Holtz was to blame in part for his own death. He was guilty of contributory negligence.
Now, here is a proposition in law given by the court to the jury, saying to them that notwithstanding a party may contribute to his own injury, yet if his negligence can be seen and known by the defendant in time to protect him or sáve his life, and it fails to do it, then such negligence of the defendant is the proximate cause, and that of the plaintiff is the remote cause, and the party may recover.
That is the proposition. So that, although Christian Holtz stood so near as to be hit, and did not watch for the train, or he started to cross when he could have seen the train approaching, notwithstanding that negligence on his part, if the railroad company saw or could have seen him in time to have saved his life, it was their duty to do it and, failing to do it, that negligence on the part of the company would be the proximate cause, and the party might recover.
This is a proposition that has undergone a vast amount of discussion by the courts. A large number of states hold it to be the law. The United States court holds it to be the law, and, as we understand it, this Btate holds it to be the law.
In 49 Ohio St., page 230, there was much discussion as to whether that case settled this principle of law or not. But a case went from this county to the supreme court, that involved the question fairly and squarely, and the supreme court affirmed the opinion of this court, or affirmed the case wherein this court had allowed a charge of that nature to stand.*
*184 We think that has settled the law of Ohio, and that that is a proper charge if the facts warrant it.
Now the only question that can be made is, whether the facts in this case would warrant that charge or not. The evidence of the wife, when weighed carefully, seems to show clearly, and we believe it is true, that Christian Holtz, when he approached that crossing, took a position so near to the railroad that the cross-beam of the engine would hit him. And we think a fair construction is that he there stood until he was hit. In that position he could have seen this Lake Shore train coming on the south track, for a distance of at least 150 feet. The Lake Shore train could have seen him that distance; they could have seen his position of danger. If the Lake Shore had whistled at 150 feet off, it was for the jury to say whether he could and would have escaped. At least, there was an opportunity there to save the life of a man; and, either by not looking out, or not whistling in time, or by some carelessness, Christian Holtz was struck.
The Railroad Company insists here that if Holtz had looked to see this train coming, he would have seen it soon enough to have escaped from his position of peril. But his opportunity to see the train was no better than that of the employes upon the train to see him. So far as we know, they were the same. Yet the train did nothing at all until it got within sixty feet of him, and then whistled; it was too late; the train was running at from 25 to 30 miles an hour, and that would give a man but a moment to escape from his dangerous position, and it was too late for him then to escape.
Now that was a matter peculiarly within the province of the jury.
Here was a distance sufficient, we think, to give a ground upon which the court could give this principle of law to the jury.
There are many cases where the time is so short, the principle is so vague and uncertain, that it was misleading for the court to give it to the jury. And it is a principle of law that the court should give with a good deal of care and caution, for it always gives a jury a chance to award a verdict where a verdict should not be given.
*185 The jury has said in this case, and evidently said upon this very question, if they have reasoned as we do upon the case, that there was an opportunity for the employes of the Lake Shore train to save the life of Holtz. They did not avail themselves of it, and that was primarily the cause of his death and, therefore, the company is liable. That the Railroad Company is guilty of negligence, no one can contend for a moment — the train being late, out of time, so that people would not have any knowledge of when it was coming — to run over crossings in a city like this, at the rate of from 25 to 30 miles an hour, as the jury found, under special finding, that it was running, is a very great (I was going to say the grossest) act of negligence; but it is negligence. But, however negligent it was, if Holtz was also negligent, his estate cannot recover unless this second act of negligence, on the part of the Railroad Company, intervened at such a time as to make the negligence of Holtz not available; and that was left to the jury, and we feel that we cannot disturb it. The law was correct, and this was a proper case in which to give it, as the majority of the court think.
The next error I will notice, pertains to the charge also:
“The next charge is that the gate-keeper on that occasion failed to give any warning of the approach of this train to the decedent.”
“It is claimed that he stood there in the vicinity of the gate, and that he had an opportunity to know and should have known of the approach of that train, and should have given warning to the decedent of its approach.
“I say to you that it was the duty of this gate-keeper to know of the time of the passing and crossing of trains upon the railroad track over that highway, and it was his duty by closing the gate — not only by closing the gate, but by giving such other warning as a person of ordinary prudence would give under like circumstances to pedestrians and others, of the approach of such trains; and it was his duty to exercise ordinary care to look out and keep watch of the approach of persons upon the highway to said railroad track, and to use ordinary care in warning them of the approach of trains and the dangers incident to using the crossing.”
*186 It is contended by the two Railroad Companies that this .charge-is erroneous, and the contention is simply this: The Railroad Companies say that when the statute of this state prescribes the putting of gates at crossings like this, and the railroad has complied with that statute, it has exercised due care and caution
It is claimed on behalf of the defendant in error that the passing of the statute removes from the railroad company no duty it owed to the public before the statute was passed, and prescribing a mode of exercising that duty, or a duty for the railroad to perform, is not prescribing the full duty of the railroad company, but, as Elliot in his work says, it is prescribing the minimum duty of the railroad company.
The statutes, of course, cannot know nor understand all the circumstances of that character at different crossings in the state where gates are prescribed.
The ordinary circumstances, at the ordinary crossing, are taken into consideration in the passage of the statute. Now, when extraordinary circumstances exist, extra hazardous circumstances, then the question is, Does the statute prescribe the full duty of the railroad company under all circumstances?
There are many cases holding that it does not prescribe the full duty of the railroad companies. I have collected just a few of these:
Joshua B. Webb v. Portland & Kennebec Railroad Company, 57 Maine, 117. There it was held that a proper regard for the security of human life imperatively requires them to make use of other and greater safe guards than those which the legislature has deemed sufficient for ways in general, many of which are little frequented.
There is much more in that volume; but I will not read it.
The Chicago, Burlington & Quincy Railroad Company v. Noah C Perkins, Administrator, 125 Illinois, 127. I read from syllabus (4):
“Negligence — Flagman at railroad crossing — Duty not limited by statute. On the trial of an action against a railroad company to recover for an injury at a street crossing, the court allowed the plaintiff -to prove the fact that the company had no flagman stationed at such crossing, without any proof that the city authorities had ever notified the company that the flagman was necessary.
*187 Syllabus (5). “It is the duty of the railway company, in the running of its trains, to use ordinary care and prudence to guard against injury to the persons or property of those who may be traveling upon the public highway and have occasion to cross its tracks, whether the specific duty be prescribed by the statute or not, The fact that the statute may provide one precaution; will not relieve the company from adopting such others as public safety and common prudence may dictate.”
The Grand Trunk Railway Company v. Ives, 144 U. S,, 406. I read only a portion of the syllabus:
“In $n action against a railroad company to recover for injuries caused by the negligence of its servants, the determination of the fact of whether the person injured was guilty of contributory negligence, is a question of fact for the jury.
“In such case, if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, an action for the injury cannot be maintained unless it further appears that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party’s negligence. ''
“In determining whether the injured party in such case was guilty of contributory negligence, the jury is bound to consider all the faets and circumstances bearing upon the question, and not elect one particular fact or circumstance-as controlling the case to the exclusion of all others.”
This is on both propositions; but I have read only as to the proposition I discussed before this one I am on now.
“The running of a railroad train within the limits of a city, at a greater speed than is permitted by the city ordinances, is a circumstance from which negligence may be inferred in case an injury is inflicted upon the person by a train.
“Whether ordinarj care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous, is a question of fact for a jury; although in some cases it has been held to be a question of law for the court.
“Where the statutes of a state make provisions in regard *188 to flagmen at crossings, this court will follow the construction given to such statutes by its courts; and, so following the decisions of the courts of the state of Michigan, it is held that the duty to provide flagmen or gates, or other adequate warnings or appliances, may exist outside of the statute if the situation of the crossing reasonably requires it.”
Wilkins v. The St. Louis, Iron Mountain & Southern Railway Company, 101 Missouri, 93. I will read from the syllabus:
“(1). Municipal ordinances prescribing certain precautions to be observed by railroads in using its street crossings do not absolve them from the exercise of ordinary care in other particulars not mentioned in the ordinances but required by the general law of the land to avoid injury to those using public crossings where the companies’ tracks are laid.
“(2). It is a part of the duty of a watchman at a public crossing to exercise ordinary care in warning persons on or near the crossing of any approach of danger from passing trains, and this is so although the ordinance prescribing the watchman only requires the presence of one at the crossing, who shall display at the cars in the day-time a red flag and at night a red light.”
This case holds that although the ordinance requires the railroad company to place a flagman there and to display a flag, that that is not his whole duty; that if circumstances are such that further notice on his part is required, it must be given.
I cite but very few of these cases. There are many of them, and the cases are somewhat at variance upon this question. There are some states that hold that when the law prescribes a duty at the crossing upon the part of the railroad company, that that is the whole duty; but I think the better considered cases, and the majority of' them hold that the passing of an ordinance or statute or law absolves the company from no duty whatever that it owed before.
Now, as in the Wilkins case, about a flagman at a crossing, putting a flagman at a crossing with a flag in his hand, that that is notice to any one about to cross,that the railroad tracks *189 are there, and they must not cross; but that court has held that that is not his whole duty; that the circumstances of the case map out his duty. It may go far beyond that. Well, a gate is nothing more than a flag; it is a signal that the railroad track is being used by the company and the crossing is not open for the public to cross; and that gate, as is the case with the flag, is nothing more than a notice; and it is not the full duty, as we think, of the railroad company under all the circumstances.
There has been much contention in the arguments in this case, as to whether or not the case in 45 Ohio St., page 878, known as the Schneider case, has decided this question, and there seems to be uncertainty about it; but, in whatever the court said, whether it said what the plaintiff in error or what the defendant in error understands, it was not a case where the court was undertaking to prescribe the full duty of the railroad and its watchman at a crossing like this. The court was not called upon to do it in the case.
The facts were in that case, that the party was injured by reason of the railroad not observing the lowering of the gates, and there was no occasion for the supreme court to go beyond that one question: Has the railroad complied with the statute, not, Has it complied with its full duty? That was not before the court, and, in using the language that the court uses in the syllabus, we are satisfied that the exact question now before this court was not present in the minds of this court, or the-language, as written, would not have been used. We think the question is an open one in this state, and the majority of the court are of the opinion that the law, as given in the charge, is the correct law to be given if the circumstances warrant it.
Now there is no such thing as law independent of facts. They are correlative, and the court, in charging as to what ordinary duty is, always charges that it is the duty under the circumstances existing and the object and purpose to' be attained. Now, did the circumstances in this particular case warrant this charge on the part of the court, or did they not? Here was this train late, and as trains that are late generally try to make up time, no doubt this train was doing the same. The flagman knew it was late; the flag- *190 m,an knew that it was liable to pass there at any moment; the party, standing there, knew nothing about it; the party standing there may have known it was late, that it was time for that train to pass; may have known the fact that there was no particular danger of any train passing on schedule time at that moment. The circumstances are such, we think, that the gate-man was called upon to use. more than ordinary care in regard to this belated train, and if persons were seen there on the track, or near the track, that they were liable to be hit by that train, it was that gate-man’s duty to do more than simply put down that gate; and if he saw this party standing in a position of danger when he might have warned him either before or after the train was coming, the majority of the court think it was his duty to do it, and failing in that doty, he has not exercised that degree of - care towards the deceased that it was his duty to do, and the majority of the court are of the opinion that this charge was correctly given, and that the circumstances of the case warrant it.
Dickey, Brewer, Bentley & McGowan, for Plaintiff in Error,
A. M. Foran, J, N. Weld, and E. A. Foote, for Defendant in Error.
Now, as to another objection that is raised to this charge, we think there is nothing in it. And as to the question that the judgment should have been entered for the railroad notwithstanding the general verdict of the jury, and this upon the general findings made by the jury,' we think the court was not warranted in so entering judgment for the railroad. The judgment was correctly entered, and we find no error; that is, the majority of the court do not, and we affirm the judgment.

L. S. & M. S. R. R. Co. v. Schade, 15 C. C., 424. Aff’d by Supreme Court without report, 38 Bull., 259.